No. 26-1183

IN THE UNITED STATES COURT
OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE MEDIA AND DEMOCRACY PROJECT,

*Petitioner*.

**REPLY IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS TO REDRESS AGENCY ACTION UNREASONABLY DELAYED BY THE FEDERAL COMMUNICATIONS COMMISSION**

Daniel G. Jarcho
6106 Harvard Avenue
Unit 126
Glen Echo, MD 20812
daniel.jarcho@gmail.com
Phone: (771) 241-9634

*Counsel for Petitioner*

## TABLE OF CONTENTS


INTRODUCTION .......... 1

I. THE COURT SHOULD ORDER THE COMMISSION TO ACT ON THE APPLICATION FOR REVIEW BECAUSE THE AGENCY'S DELAY IS EGREGIOUS .......... 3

A. The Commission Ignores the Evidence That the Delay is Egregious Because it Stems From an Improper Purpose .......... 3

B. The Commission Violated a "Rule of Reason" Establishing a Relative, Not Absolute, Time Frame for Unreasonable Delay .......... 5

C. Legitimate Competing Agency Priorities Do Not Provide a Justification for the Delay .......... 8

D. The Interests Prejudiced by Delay Justify Relief .......... 11

1. The Delay Undermines The Court's Ability to Conduct Meaningful Judicial Review .......... 11

2. The Commission's Inaction Prejudices Core First Amendment Interests .......... 12

3. The Delay Irreparably Harms MAD's Members .......... 12

II. IN THE ALTERNATIVE, THE COURT SHOULD AUTHORIZE MAD TO TAKE DISCOVERY REGARDING THE REASONS FOR DELAY .......... 13

CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*ABC v. FCC*,
1:26-cv-2902 (D.D.C.) ........ 1

*In re Barr Laboratories, Inc.*,
930 F.2d 72 (D.C. Cir. 1991) ........ 3, 10

*Bartko v. SEC*,
845 F.3d 1217 (D.C. Cir. 2017) ........ 4

*Broadband Communications Ass'n v. FCC*
(D.C. Cir. No. 26-1062) ........ 7

*Bryant v. Gates*,
532 F.3d 888 (D.C. Cir. 2008) ........ 4

*Cherokee Nation v. U.S. Dep't of the Interior*,
531 F. Supp. 3d 87 (D.D.C. 2021) ........ 14, 15

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ........ 2

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*,
842 F. Supp. 2d 127 (D.D.C. 2012) ........ 14

*San Francisco Baykeeper v. Whitman*,
297 F.3d 877 (9th Cir. 2002) ........ 14

### Statutes

47 U.S.C. § 155(c)(4) ........ 2

47 U.S.C. § 155(c)(5) ........ 2

All Writs Act ........ 13

**Other Authorities**

J.B. Bernthal, *Procedural Architecture Matters: Innovation Policy at the Federal Communications Commission*, 1 Tex. A&M L. Rev. 615 (2014) .......... 1, 3

*FCC Reminds Broadcasters of their Public Interest Obligations*, DA-26-530 (released May 28, 2026), https://www.fcc.gov/document/fcc-reminds-broadcasters-their-public-interest-obligations .......... 9

Glen O. Robinson, *Independent Agencies: Form and Substance in Executive Prerogative*, 1988 Duke L.J. 238 (1988) .......... 3

U.S. Gov't Accountability Off., GAO-10-79, *FCC Management: Improvements Needed in Communication, Decision-Making Processes, and Workforce Planning* (2009), https://www.gao.gov/assets/gao-10-79.pdf .......... 2, 10

## INTRODUCTION

The Commission already has decided that MAD's Application for Review should be denied — the agency simply has refused to memorialize that decision in an appealable final order.

Back in March 2025 (just five weeks after MAD filed the Application), Chairman Brendan Carr issued a formal public response to an oversight inquiry by Senator Richard Blumenthal that covered the disparate treatment issues raised in MAD's mandamus petition. The Chairman's response asserted that MAD's underlying petition to deny renewal of the Fox license had "merited immediate dismissal." Ex. 2 at 2; *see also* Ex. 1. The Chairman controls decision-making at the Commission, by "direct[ing] the staff through bureau and office chiefs," who are "directly responsive to the Chairman."[1] It therefore is not surprising that the Chairman's longstanding and clearly-articulated position (that MAD's licensing challenge was properly dismissed) has become the public position of the agency itself. In a recent District Court filing in *ABC v. FCC*, 1:26-cv-2902 (D.D.C.), the Commission asserted that the Media Bureau correctly dismissed MAD's petition to deny (based upon a fulsome record). Ex. A to Rule 28(j) Letter from Daniel G.

---

[1] J.B. Bernthal, *Procedural Architecture Matters: Innovation Policy at the Federal Communications Commission*, 1 Tex. A&M L. Rev. 615, 638 (2014).

Jarcho to Clifton Cislak (filed September 11, 2026), at 31-33 (citing Chairman Carr's March 2025 response to Senator Blumenthal).

Given its publicly-pronounced position that the Media Bureau decision was correct and justified by a well-developed record, the agency cannot legitimately refuse to memorialize that position in a final order. The Commission has a mandatory statutory duty to do so. 47 U.S.C. § 155(c)(4); Pet. 2-3. And the Commission has no excuse for waiting to draft an accompanying opinion. The Commission can issue an order denying the Application "without specifying any reasons therefor." 47 U.S.C. § 155(c)(5).

Nevertheless, unless the Court intervenes, the Chairman's avoidance of final agency action — and his corollary frustration of MAD's statutory right to judicial review, which serves as a check on the agency's authority and ensures its decisions conform to the law (*see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)) — will be indefinite and unassailable. That is because the Chairman unilaterally "sets the agency's agenda by directing the work of the bureaus and offices . . . ." U.S. Gov't Accountability Off., GAO-10-79, *FCC Management: Improvements Needed in Communication, Decision-Making Processes, and Workforce Planning* (2009), at 24, https://www.gao.gov/assets/gao-10-79.pdf. The longstanding reality is that "the FCC's chairman and a handful of staff — usually selected by the chair — can and usually do exercise nearly total control over that agency's basic policy

agenda." Glen O. Robinson, *Independent Agencies: Form and Substance in Executive Prerogative*, 1988 Duke L.J. 238, 245 n.24 (1988); *see also* Bernthal, *Procedural Architecture Matters*, 1 Tex. A&M L. Rev. at 640 (FCC Chairman "generally controls the Agency's agenda"). The Court should break that bureaucratic roadblock and enforce the agency's mandatory statutory duty by issuing the writ of mandamus.

# I. THE COURT SHOULD ORDER THE COMMISSION TO ACT ON THE APPLICATION FOR REVIEW BECAUSE THE AGENCY'S DELAY IS EGREGIOUS

## A. The Commission Ignores the Evidence That the Delay is Egregious Because it Stems From an Improper Purpose

Why is the Commission refusing to memorialize its adverse decision in a final order? MAD's mandamus petition set forth substantial evidence that the Commission is singling out the Application for Review — by delaying action on it — because it challenges a broadcast license held by a station perceived as supporting President Trump's election (based on misrepresentations that President Trump himself has embraced and repeated). Pet. 23-28. Agency delay through such "especially shabby treatment of one applicant" that has been "singled . . . out for mistreatment" establishes (in and of itself) that the delay is "egregious." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

The Commission does not even mention this evidence of impropriety (much less refute it). The Commission also does not deny that President Trump directs

Chairman Carr's actions. Pet. 25-26. Or that Chairman Carr is avoiding action on the Application to curry favor with the President. *Id.* The Commission's only explicit response to these issues is a single conclusory sentence asserting that the "claims of improper purpose" are "baseless." Opp'n 19. "'It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.'" *Bartko v. SEC*, 845 F.3d 1217, 1224 n.7 (D.C. Cir. 2017) (citation omitted). A party forfeits an argument made only in a "single, conclusory statement." *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008).

Instead of rebutting the evidence of improper purpose, the Commission simply changes the subject, asserting that it took action in the ABC, CBS, and NBC matters because it wanted a more fulsome record. Opp'n 20. But even assuming that claim is accurate as far as it goes, it does not come close to disproving the improper purpose. Why did the agency want the more fulsome record (which no party to those proceedings requested)? The undisputed reason is to pursue possible sanctions against stations perceived as undermining President Trump's election. And how could expanding the record in the ABC, CBS, and NBC proceedings justify indefinitely withholding final action on MAD's Application — when the agency insists a fulsome record already exists — instead of finally disposing of it with the same vigor with which the Commission is pursuing those other matters? The Commission has no answer to that question.

### B. The Commission Violated a "Rule of Reason" Establishing a Relative, Not Absolute, Time Frame for Unreasonable Delay

Although the agency's improper purpose (taken alone) justifies mandamus, MAD need not win that issue to prevail on its petition. Pet. 22. The Commission's delay also has violated a "rule of reason," which is the most important *TRAC* factor. *Id*. 16. The "rule of reason" invoked by MAD — namely the arbitrary and capricious standard — establishes a relative, not absolute, time frame for unreasonable delay in this case. *Id*. The critical question is whether the agency is slow-walking action MAD's Application while accelerating similarly-situated proceedings without a reasonable basis for the distinction. The Commission is simply wrong when it asserts that this is a "merits" argument. Opp'n 18. It is an argument that the delay violates a "rule of reason" (under the first *TRAC* factor) because the disparate treatment (concerning the pace of agency proceedings) has no rational basis. Pet. 16-20.

The Commission does not deny that the Fox, ABC, CBS, and NBC proceedings are similarly-situated, such that there must be a rational basis for treating them differently. *Compare* Pet. 17-19 *with* Opp'n 19-21. But the Commission does not even discuss why its time frames for action in the four proceedings are so extraordinarily different. It took four business days for the agency to take action that would facilitate sanctions against the ABC, CBS, and NBC stations perceived as undermining President Trump's election. And it has taken

more than four *hundred* business days (and counting) for the agency to take action on MAD's Application, which (assuming MAD succeeds on the merits through judicial review) would facilitate sanctions against the Fox station perceived as supporting President Trump's election.

The Commission does not proffer any justification for this more than 100-to-1 difference in action times. The Commission instead digresses to the *stated reason* that it took action in the ABC, CBS, and NBC matters, which was to establish a more fulsome record. Opp'n 20. But that rationale for its actions has nothing to do with the reason for their expedited *pace* (i.e., within four business days and within two days after President Trump's 2025 inauguration and Commissioner Carr's elevation to Chairman). And establishing a more fulsome record in the ABC, CBS, and NBC matters does not explain why the agency has refused to act at all in the similarly-situated Fox proceedings. The only evidence in the record that addresses the disparate pace of these different proceedings is the evidence of improper purpose.

Instead of discussing the *relative-time* "rule of reason" identified by MAD, the Commission asserts that the *absolute* time taken by the agency is not long enough to be considered unreasonable. Opp'n 14 n.1. But the Commission then contradicts itself by admitting that there is no defined period of time that constitutes unreasonable delay in all cases. *Id*. 13-14. As the Commission concedes, the

specific facts and circumstances of a case are what matters. *Id*. But the Commission then ignores those factors in its arguments.

The Commission also advances a boilerplate argument that the Application is too complex to have been ruled upon by now. Opp'n 16. That assertion simply is not credible. The agency already has decided — and the Chairman already has made clear to the agency's congressional overseers — that the Application is wrong on the merits. All that the Commission needs to do is issue a one-sentence final order denying relief, so that MAD can pursue judicial review. *See supra* at 1-2.

Furthermore, the Commission's generic "complexity" excuse reads like *post-hoc* assertions of counsel (not an assessment by agency personnel whose resources would actually be drawn upon to draft the final order). What would knowledgeable agency staff say about the task at hand? The Commission is fully capable of giving the Court a progress report based on information from knowledgeable staff, and providing a time frame for final decision, when it wants to. *See, e.g.*, Opposition to Emergency Petitions for Writ of Mandamus, *Broadband Communications Ass'n v. FCC* (D.C. Cir. No. 26-1062) (filed May 11, 2026), at 12-13 (responding to Court order by explaining that application for review of Media Bureau order was "now under active consideration" with the Commission "weighing all relevant considerations" and predicting that it will "be able to act on the application for review this year").

But the agency has not given the Court such a progress report. In this case, the Commission has not stated that work has *started* on MAD's Application. The Commission has not even stated that the Application has been placed in a queue for work to begin on it in the future at any particular point. There certainly is no projected time frame for a final decision. It appears that the Application has disappeared into a bureaucratic black hole, to languish there until the Court shines the light in by issuing the writ of mandamus.

### C. Legitimate Competing Agency Priorities Do Not Provide a Justification for the Delay

The Commission's Opposition includes a boilerplate argument asserting that competing agency priorities justify the delay. Opp'n 14-15. The Commission proffers a list of recent FCC policy decisions and implies — but never directly claims — that they have diverted resources from MAD's Application. *Id*. 16-17. There is a good reason that the Commission avoids making this claim directly. Those decisions are completely irrelevant, because they concern work by agency bureaus other than the Media Bureau.[2] The resources that matter here are those of the Media Bureau, which would be responsible for drafting the final order before it is issued.

[2] *See* Opp'n 17 n.2 (addressing work of the Wireless Telecommunications Bureau); *id*. n.3 (addressing work of the Public Safety and Homeland Security Bureau); *id*. n.4 (addressing work of the Public Safety and Homeland Security Bureau).

The Commission does not identify any conflicting demands on the Media Bureau that would divert resources from MAD's Application.

In fact, the Commission does not even mention the agency's most relevant policy priority: the "robust" enforcement of the public interest requirement (including the character requirement). Pet. 21-22. That omission is quite telling, because the agency's inaction on MAD's Application clashes headlong with that policy priority. The Media Bureau has devoted substantial attention and jawboning to that policy priority (notably in non-final Public Notices and orders similar to the order dismissing the MAD petition to deny, s*ee, e.g.*, *FCC Reminds Broadcasters of their Public Interest Obligations*, DA-26-530 (released May 28, 2026), https://www.fcc.gov/document/fcc-reminds-broadcasters-their-public-interest-obligations). And that priority is, of course, directly related to the subject matter of MAD's Application.

The Commission's focus on "robust" enforcement of the public interest requirement, with a particular emphasis on the character issue, as a high (perhaps the highest) Media Bureau priority means that it cannot even attempt to justify the *disparate treatment* — of ABC, CBS, and NBC stations, on the one hand, and the Fox station, on the other — based on a difference in legitimate agency priorities. All of these matters fall within *same* high Commission priority. Pet. 21-22. The problem is that the Commission has only taken action consistent with that priority

in the ABC, CBS, and NBC matters, in lightning-fast orders issued just two days into the tenure of President Trump and Chairman Carr. In stark contrast, slow-rolling the Fox matter is *contrary* to the agency's stated "robust" enforcement priority.

It is difficult to explain this disparate treatment other than a prioritization based upon the stations' perceived support for, or opposition to, President Trump's election. The Commission's Opposition does not even suggest any alternative to this "best-fit" explanation. And the prioritization obviously is not based upon legitimate policy — it is viewpoint discrimination that violates the First Amendment. Pet. 29-30. As a result, "the issue of impropriety intersects with [*TRAC* factor] four's sensitivity to the agency's legitimate priorities. Where the agency has manifested bad faith, as by singling someone out for bad treatment . . . the agency will have a hard time claiming legitimacy for its priorities." *Barr Laboratories*, 930 F.2d at 76.

The essential problem here is that "all bureau and office chiefs report to the chairman," and "the chairman [has] complete discretion when assigning bureau staff to address an item . . . ." GAO-10-79, *FCC Management*, at 17-18. The Chairman can stymie action on a matter like MAD's Application even when a matter falls within the publicly-stated priorities of the agency. To prevent this situation from lingering and depriving MAD of its statutory right to judicial review, the Court should intervene and issue the writ of mandamus.

### D. The Interests Prejudiced by Delay Justify Relief

The Commission's discussion of the interests prejudiced by delay is essentially a rehash of its other arguments. Opp'n 21-22. By taking this approach, the Commission turns a blind eye to the serious prejudice that its inaction has caused.

#### 1. The Delay Undermines The Court's Ability to Conduct Meaningful Judicial Review

The delay undermines the Court's ability to conduct meaningful judicial review on important issues concerning the Commission's character requirements. The Commission tries to sidestep the issue by asserting that the Court will eventually be able to exercise its authority some day in the future (whenever that may be). Opp'n 21. The Commission completely ignores the present context. It does not deny that the Chairman's inaction is part of a broader pattern in which the agency "strategic[ally] avoid[s] regulating through judicially reviewable actions" and "exerts substantial power through unreviewable staff-level actions at the Chairman's unilateral direction." Brief of Former FCC Chairman Alfred Sikes and Former FCC Commissioner Ervin Duggan as Amici Curiae in support of Petitioner (filed July 21, 2026), at 8, 5.

At its worst, the Commission talks out of both sides of its mouth, by claiming (on the one hand) that the substance of a staff-level decision is correct yet refusing (on the other) to decide an agency appeal of that decision that would yield a

judicially-reviewable final action. That is what the Commission has done here, by asserting *both* that MAD's challenge to the Fox license lacks merit (when it serves the agency's interests in District Court) *and* that the agency has not finally decided the merits of the Fox license challenge (when it serves the agency's interests avoiding judicial review in this Court). The Court should not condone this facile manipulation of finality. The proper judicial response is to issue a writ of mandamus ordering final action (not simply drop the matter based on the agency's vague promise of a decision in the indefinite future).

### 2. The Commission's Inaction Prejudices Core First Amendment Interests

The Commission's inaction also prejudices core First Amendment interests, by delaying proceedings perceived as undermining President Trump's election and accelerating proceedings perceived as supporting President Trump's election. Pet. 29-30. The Commission diverts its discussion to other First Amendment issues and does not respond to this critical point. Opp'n 22.

### 3. The Delay Irreparably Harms MAD's Members

The delay also irreparably harms MAD's members, by depriving them of their statutory right to receive broadcasts from a licensee whose reliability and truthfulness they can trust. The Commission feigns ignorance of how the Fox station's reliability and truthfulness could be compromised through information disseminated through a sister cable channel. Opp'n 22. As MAD's mandamus

petition explains — and the Commission never disputes — the broadcast licensee's reliability and truthfulness can be tainted by misconduct at its corporate parent or affiliates (even if they are not broadcast entities subject to licensing by the Commission). Pet. 5-6. And that is exactly what has happened here. *Id*. 8-11. MAD's members will continue to suffer this injury until the matters raised in the Application are resolved on the merits.

## II. IN THE ALTERNATIVE, THE COURT SHOULD AUTHORIZE MAD TO TAKE DISCOVERY REGARDING THE REASONS FOR DELAY

In the alternative, the Court should authorize MAD to take discovery regarding the reasons for delay. The Commission does not deny that the Court has authority under the All Writs Act to order a "special factual inquiry" — including discovery overseen by a special master — into unreasonable delay based on deliberate disparate treatment. Pet. 31-33. The unrebutted evidence of improper purpose justifies discovery on that issue if the Court concludes the record must be supplemented to warrant issuing the writ.

The Commission is simply wrong when it asserts that MAD has a high hurdle in justifying discovery. Opp'n 23-24. That hurdle applies in agency-review cases in which there has been a final agency action, and the court reviews that action based on the administrative record (which is the record before the agency at the time it made its final decision). By contrast, in an unreasonable delay case, *there is no final*

*agency action that the court can weigh against a record*. Rather, the court's function is to determine whether the agency's failure to act was unlawful or unreasonable. Because an administrative record is inextricably tied to a final-action date, it is not even possible to identify an administrative record when the agency has not acted. "[W]hen a court considers a claim that an agency has *failed* to act in violation of a legal obligation, 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.'" *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (citation omitted); *see also Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984)) ("If an agency fails to act, there is no 'administrative record' for a federal court to review."). The "reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions." *San Francisco Baykeeper*, 297 F.3d at 886.

Given these well-established principles, the agency gains no traction by citing the *Cherokee Nation* case to support its assertion about discovery limitations. Opp'n 24. *Cherokee Nation* actually *refutes* the Commission's argument, holding that the discovery hurdles at issue apply in ordinary agency-review cases (involving final

agency action) but do *not* apply in unreasonable delay cases (when the agency has taken no final action). *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 96 (D.D.C. 2021) (rejecting agency's "'ill founded'" and "'unsound'" effort to require a "'strong . . . showing'" to justify discovery into agency inaction because agency had "'confuse[d] a challenge to final agency action and a challenge to an agency's failure to act'") (citations omitted).

In *Cherokee Nation*, the District Court ordered discovery into agency delay based on ordinary principles of relevance and proportionality. *Id*. at 98-102. In this case, the Court has the same authority as a District Court would to order discovery by applying the same principles. Pet. 32. There is no high hurdle for discovery here. The simple question is whether MAD has proffered sufficient evidence to justify a "special factual inquiry" if the Court decides that it needs more information before it can determine whether mandamus should issue. The mandamus petition includes more than sufficient evidence for that limited purpose.

Finally, the Commission does not deny that if discovery proceeds, the agency may not invoke the deliberative process privilege in response. To hold otherwise would defeat the whole purpose of discovery into the agency's internal reasons for delay. Pet. 33 & n.30. In addition, the Commission has waived the issue by failing to respond to it. To make discovery most efficient, any order for discovery should

specify that the deliberative process privilege is unavailable to the agency on the issues in this case.

## CONCLUSION

The Court should order the Commission to act promptly on MAD's Application. In the alternative, the Court should authorize MAD to conduct discovery to produce a record that can be used to inform the Court's mandamus decision. If the Court orders discovery, it should specify that the deliberative process privilege is not available to the agency in its responses.

Respectfully submitted,

/s/ Daniel G. Jarcho

Daniel G. Jarcho
6106 Harvard Avenue
Unit 126
Glen Echo, MD 20812
daniel.jarcho@gmail.com
Phone: (771) 241-9634

November 19, 2026

Counsel for Petitioner

## CERTIFICATE OF COMPLIANCE

I, Daniel G. Jarcho, counsel for Petitioner, hereby certify that the foregoing Reply complies with the word limit in the Court's October 6, 2026, order, because the Reply contains 3,581 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

/s/ Daniel G. Jarcho
Daniel G. Jarcho

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel G. Jarcho, counsel for Petitioner, hereby certify that on November 19, 2026, I caused the foregoing Reply to be served on the following by email to LitigationNotice@fcc.gov and through the Court's ECF system:

Jacob M. Lewis
Sarah E. Citrin
Keith A. McCrickard
Counsel for the Federal Communications Commission

and through the Court's ECF system on:

John Grimm
Counsel for Amici Curiae

I further certify that on November 19, 2026, I sent a courtesy copy of the foregoing Reply to Matthew S. DelNero, counsel for Fox Television Stations, LLC, at mdelnero@cov.com.

<u>/s/ Daniel G. Jarcho</u>
Daniel G. Jarcho